1  Scott S. Thomas, NV Bar No. 7937
   sst@paynefears.com
2  Sarah J. Odia, NV Bar No. 11053
   sjo@paynefears.com
3  Hilary A. Williams, NV Bar No. 14645
   haw@paynefears.com
4  PAYNE & FEARS LLP
   6385 S. Rainbow Blvd., Suite 220
5  Las Vegas, Nevada 89118
   Telephone: (702) 851-0300
6  Facsimile: (702) 851-0315
   *Attorneys for Capitol Specialty Insurance*
7  *Corporation*

8

9                    **UNITED STATES DISTRICT COURT**

10                         **DISTRICT OF NEVADA**

11  CAPITOL SPECIALTY INSURANCE              Case No.:
    CORPORATION, a Wisconsin corporation,
12  as assignee of UNITED CONSTRUCTION       **CAPITOL SPECIALTY INSURANCE**
    COMPANY, a Nevada Corporation,           **COMPANY'S COMPLAINT FOR:**
13
                                             **(1) BREACH OF CONTRACT;**
14              Plaintiff,
                                             **(2) BREACH OF THE IMPLIED**
15         v.                                **COVENANT OF GOOD FAITH AND**
                                             **FAIR DEALING;**
16  STEADFAST INSURANCE COMPANY, a
    Delaware corporation and ARCH            **(3) VIOLATIONS OF NEVADA'S**
17  SPECIALTY INSURANCE COMPANY, a           **UNFAIR CLAIMS SETTLEMENT**
    Missouri Corporation.                    **PRACTICES ACT, NEV. REV. STAT.**
18                                           **ANN. § 686A.310;**
                Defendants.
19                                           **(4) DECLARATORY RELIEF—DUTY TO**
                                             **DEFEND.**
20
                                             **JURY DEMAND**
21

22         Plaintiff Capitol Specialty Insurance Corporation ("Plaintiff") hereby alleges as follows:

23                                  **PARTIES**

24         1.      At all times mentioned herein, Plaintiff was and is a Wisconsin corporation with its

25  principal place of business in Middleton, Wisconsin.

26         2.      Plaintiff is pursuing the claims set forth as an assignee of United Construction

27  Company ("United"), a Nevada corporation with its principal place of business in Reno, Nevada.

28

*Left margin (vertical text):* PAYNE & FEARS LLP — ATTORNEYS AT LAW — 6385 S. RAINBOW BLVD, SUITE 220 — LAS VEGAS, NEVADA 89118 — (702) 851-0300

3.    Plaintiff is informed and believes, and on that basis alleges, that Defendant Steadfast Insurance Company ("Zurich") at all times mentioned herein was and is a Delaware corporation with its principal place of business in Illinois.

4.    Plaintiff is informed and believes, and on that basis alleges, that Defendant Arch Specialty Insurance Company ("Arch") at all times mentioned herein was and is a Missouri corporation with its principal place of business in Kansas City, Missouri.

## JURISDICTION AND VENUE

5.    This Court has original jurisdiction over this action founded on diversity of citizenship pursuant 28 U.S.C. § 1332, because the matters in controversy exceed $75,000.00, exclusive of interest and costs, and because complete diversity exists between Plaintiff and Defendant.

6.    Venue is proper in this Court in accordance with 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

7.    United Construction Company ("United") is a commercial construction company that provides design-build services to commercial property owners.

8.    Steadfast issued a Contractor's Protective Professional Indemnity and Liability Insurance policy to United, Policy No.: EOC 0193620-00 to United, that incepted on April 20, 2016 and expired on April 20, 2017, with limits of $5,000,000 (the "Zurich Policy").

9.    Arch issued a Contractor's Professional Liability Pollution Liability and Protective Indemnity Insurance policy to United, Policy No. PDCPP0021200, that incepted on April 20, 2017, and expired on April 20, 2018, with limits of $5,000,000 (the "Arch Policy").

**The Milan Claim**

10.    On October 10, 2014, United entered into a design-build contract with KTR Capital Partners for the design and construction of the Eagle Valley II distribution facility located at 385 Milan Ave., Reno, Nevada ("the Milan Property").

11.    The Milan Property was designed and built with a White Thermoplastic (TPO) Membrane Roof.

12.    The Milan Property was completed in June 2015.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

13.    On or around April 5, 2016, physical damage, including but not limited to mold and other moisture-related damage, was discovered in and around the roof membrane and components of the Milan Property.

14.    In or around July 2016, the owners of the Milan Property asserted a claim against United for the damage to the Milan Property, alleging that the damage was caused by United's professional engineering services, namely, United's design of the roof  (the "Milan Claim").

15.    United promptly tendered the Milan Claim to Zurich under the Zurich Policy on August 5, 2016.

16.    On September 22, 2016, United's experts issued a report concluding that the damage to the Milan Property was primarily a result of the design of the roof.

17.    Zurich wrongly denied United's tender of the Milan Claim on November 16, 2016.

18.    Zurich's denial of the Milan Claim was wrongful, was a breach of contract, and further breached the covenant of good faith and fair dealing.

19.    United incurred damages in excess of $1,000,000, including costs incurred remediating the Milan Property, as a result of the Milan Claim.

**The Virginia Street Claims**

20.    On November 26, 2014, United entered into two design-build contracts with Logisticenter 395 Owner LLC ("Logisticenter") for the design and construction of Logisticenter 395 Building A and Building C, located at 8020 and 8040 N. Virginia Street, Reno, Nevada  (the "Virginia Street Properties").

21.    The Virginia Street Properties are part of the LogistiCenterSM at 395 multi-phase, master-planned industrial park in Reno, Nevada. The project consists of five commercial warehouses built in two phases.

22.    The Virginia Street Properties were designed and built with a White Thermoplastic (TPO) Membrane Roof.  The design and configuration of the roof used for the Virginia Street Properties was the same as the design and configuration of the Milan Property.

23.    The Virginia Street Properties were completed in September of 2015.

24.    Physical damage, including but not limited to mold and other moisture-related

1  damage, was discovered within the roof substrates of the Virginia Street Properties during tenant

2  improvements in or around June or July 2016.

3      25.    Logisticenter asserted a claim against United for the damage to the Virginia Street

4  Properties and demanded that United remediate the damage (the "Virginia Street Claims").

5      26.    United's experts inspected the Virginia Street Properties and issued a report dated

6  August 26, 2016, concluding that the damage to the Virginia Street Properties was primarily

7  caused by the White Thermoplastic (TPO) Membrane Roof design.

8      27.    United tendered the Virginia Street Claims to Zurich under the Zurich Policy on

9  August 5, 2016.

10     28.    On October 20, 2016, Zurich issued a reservation of rights letter agreeing to defend

11 United against the Virginia Street Claims and acknowledging coverage of the claims under the

12 Zurich Policy.

13     29.    As stated in Zurich's October 20, 2016 reservation of rights letter, Zurich

14 determined that "both buildings [8020 N. Virginia Street and 8040 N. Virginia Street] constitute a

15 single 'claim'" under the Zurich Policy, "as the alleged damages for these buildings arise ' ... out

16 of the same, interrelated, associated, repeated or continuous negligent act, error or omission or a

17 series of related negligent acts, errors or omissions ....,'" namely United's use of the White

18 Thermoplastic (TPO) Membrane Roof design.

19     30.    Zurich paid the Virginia Street claim by reimbursing United $1,922,413.40 for the

20 cost of remediating the Virginia Street Properties.

21 **The Military Road Claim**

22     31.    On September 25, 2015, United entered into a design-build contract with Dermody

23 Operating Company (Logisticenter's parent company) for the design and construction of

24 Logisticenter 395, Phase II, Building I, located at 8730 Military Road, Reno, Nevada (the

25 "Military Road Property").

26     32.    Like the Virginia Street Properties, the Military Road Property is also part of the

27 LogistiCenterSM at 395 multi-phase, master-planned industrial park.

28     33.    The Military Road Property was completed in July 2016.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

34.    The Military Road Property implemented the same roof design that United implemented at the Virginia Street Properties, a White Thermoplastic (TPO) Membrane Roof.

35.    On or around April 14, 2017, the owner of the Military Road Property discovered physical damage, including but not limited to mold and other moisture-related damage, within the roof substrates of the Military Road Property. The parties later determined that the damage to the Military Road Property was caused by the same White Thermoplastic (TPO) Membrane Roof design that caused the property damage to the Virginia Street Properties.

36.    Thereafter, the owner of the Military Road Property asserted a claim against United for the damage (the "Military Road Claim").

**Zurich's Response to Military Road Claim**

37.    On or around April 18 2017, United asked its insurance broker, L/P Insurance Services, LLC ("L/P"), to tender the Military Road Claim to its insurers.

38.    On April 20, 2017, the Zurich Policy expired.

39.    United did not renew the Zurich Policy.

40.    On June 20, 2017, the sixty (60) day extended reporting period under the Zurich Policy expired.

41.    On July 11, 2017, United contacted Zurich to obtain a status update on the Military Road Claim.

42.    On July 12, 2017, Zurich advised United that it did not have a claim number in its system and offered to work with L/P "to ensure we have the tender docs and that a claim number has been established and assigned to the proper Claims Specialist."

43.    On or around July 18, 2017, L/P notified Zurich's claim adjuster, Chris Ford, that the Military Road Claim was related to the Virginia Street Claims. Chris Ford handled the related Virginia Street Claims for which Zurich had previously acknowledged coverage.

44.    On July 27, 2017, Zurich issued its letter to United denying coverage under the Zurich Policy for the Military Road Claim.

45.     In Zurich's coverage denial letter, Zurich notified United that it did not timely receive notice of the Military Road Claim within the Zurich Policy period or within the extended

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

1   reporting period.

2       46.    The related claims provision in the Zurich Policy does not provide any deadline for

3   reporting related claims.

4       47.    Pursuant to the related claims provision in the Zurich Policy, "two or more

5   'Claims' … arising out of the same, interrelated, associated, repeated or continuous negligent act,

6   error or omission or a series of related negligent act, error or omission or a series of related

7   negligent acts, errors or omissions shall be treated as a single 'Claim.'"

8       48.    Under the Zurich Policy, related claims "whenever made, shall be considered first

9   made on the date on which the earliest 'Claim' or 'Protective Indemnity Claim' was first reported

10  to us [Zurich] … ."

11      49.    The Military Road Claim is related to the Milan Claim and the Virginia Street

12  Claims, which were both tendered to Zurich during the Zurich Policy.

13      50.    Therefore, United's reporting of the Military Road Claim was timely under the

14  Zurich Policy, which does not set forth any reporting deadline for subsequent related claims.

15      51.    The Zurich Policy also contains a notice of circumstance provision, which states

16  that to the extent the insured provides Zurich written notice, before the Policy Period expires, of an

17  actual or alleged negligent act, error or omission "which may be expected to give rise to" a claim

18  under the policy, any claim for which coverage is provided by the policy that may be made against

19  the insured shall be deemed to have been made on the date on which notice of circumstance was

20  given.

21      52.    Zurich was provided with written notice during the Zurich Policy period of the

22  Milan Claim and Virginia Street Claims. Pursuant to the Zurich Policy's notice of circumstance

23  provision, Zurich had sufficient notice of an actual or alleged negligent act, error or omission

24  "which may be expected to give rise to" the Military Road Claim. Therefore, the Military Road

25  Claim should be deemed to have been made on the earliest date during the Zurich Policy period on

26  which Zurich was provided notice of such circumstance.

27      53.    United notified Zurich that the Milan Claim and the Virginia Street Claims were

28  related to the Military Road Claim and requested that Zurich reconsider its coverage denial. Zurich

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

1 refused to reconsider its denial.

2    54.    Because United was entitled to coverage under the Zurich Policy for the Military

3 Road Claim, and because Zurich knew this but ignored it, Zurich's denial of coverage was

4 unreasonable and constituted a breach of the duty to defend and a breach of the covenant of good

5 faith and fair dealing.

6 **Arch's Response to the Military Road Claim**

7    55.    After Zurich wrongfully denied coverage for the Military Road Claim, United

8 continued to pursue the Military Road Claim through United's subsequent professional liability

9 carrier, Arch.

10    56.    On November 10, 2017, Arch denied coverage for the Military Road Claim,

11 alleging that the claim related back to the Milan Claim and the Virginia Street Claims.

12    57.    Arch's declination letter indicated that because the Military Road Claim is related

13 to the Milan Claim and the Virginia Street Claims, Zurich should be responsible for coverage of

14 the Military Road Claim.

15    58.    If the Military Road Claim is not a related claim under the Arch Policy, United is

16 entitled to coverage from Arch.

17 **United's Assignment of Claims to Plaintiff**

18    59.    Plaintiff issued an Insurance Agents and Brokers Professional Liability Policy to

19 L/P.

20    60.    United filed a lawsuit against L/P seeking damages related to the Military Road

21 Claim. United alleged that its damages for the Military Road Claim would have been covered by

22 the Zurich Policy but for L/P's alleged failure to tender the Military Road Claim to Zurich prior to

23 the expiration of the extended reporting period under the Zurich Policy.

24    61.    Plaintiff, L/P, and United settled all of United's claims against L/P related to the

25 Military Road Claim.

26    62.    As part of the settlement, United assigned to Plaintiff all of its claims against

27 Zurich and Arch related to the Milan Claim and the Military Road Claim. A copy of the

28 Assignment is attached hereto as Exhibit "1."

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

63.     Plaintiff is pursuing United's claims against Zurich and Arch pursuant to the Assignment.

### FIRST CAUSE OF ACTION

### (Breach of Contract – Against All Defendants)

64.     Plaintiff realleges the allegations set forth above and incorporates them by reference as though fully set forth herein.

65.     Zurich denied coverage to United for the Milan Claim under the Zurich Policy, as described more fully above.

66.     Zurich and Arch each denied coverage to United for the Military Road Claim, as described more fully above.

67.     United as assignor, and Plaintiff, as assignee, have performed all obligations owing under the Zurich Policy and the Arch Policy, respectively, in connection with United's tenders of the Milan Claim Zurich and the Military Road Claim to both Zurich and Arch, and have satisfied all relevant conditions precedent.

68.     Zurich failed to discharge its contractual duty to defend and indemnify United against the Milan Claim.

69.     Zurich and Arch each failed to discharge their contractual duties to defend and indemnify United against the Military Road Claim.

70.     As a direct and proximate result of Defendant's conduct as alleged in this Complaint, Plaintiff, as the assignee of United, has been damaged and will continue to be damaged in an amount in excess of $2.6 million, to be proven at trial.

### SECOND CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing – Against  Zurich)

71.     Plaintiff realleges the allegations set forth above and incorporates them by reference as though fully set forth herein.

72.     Zurich owed and continues to owe United a duty of good faith and fair dealing, obligating Defendants to put United's interests equal with or ahead of its own interests and to do nothing to deprive United of policy benefits.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

73.    Rather than honor its obligations, Zurich has instead sought to protect its own interests and has subordinated United's interests by refusing to discharge its contractual duties without reasonable grounds or good cause.

74.    In addition, Zurich refused to discharge its contractual duties without reasonable grounds or good cause either knowingly or with reckless disregard.

75.    Accordingly, Zurich has deprived United of its rights and benefits under the Zurich Policy.  For example:

a.    Zurich was notified by United and/or its agent, LP that the Military Road Claim was related to the Virginia Street Claims, which Zurich acknowledged were covered under the Zurich Policy. Zurich unreasonably refused to investigate whether the Military Road Claim was related to the Virginia Street Claims, even though the claims are obviously related under the terms of the Zurich Policy, as the claims involve the same wrongful act by United, the same roof design, and the buildings are within the same industrial park project designed and built by United.

b.    After its initial denial, United provided Zurich with additional facts supporting the relatedness of the claims and requested that Zurich reconsider its denial of the Military Road Claims under the Zurich Policy. Zurich unreasonably refused to consider United's request for reconsideration and stood by its wrongful denial, even in the fact of indisputable facts showing that the Military Road Claim and Virginia Street Claims were related claims under the Zurich Policy.

c.    Zurich breached the duty of good faith and fair dealing by applying its policy inconsistently, and in a way that protects Zurich's own interests instead of the interests of its insured, United. Pursuant to clearly applicable law, Zurich has a duty to apply its policy terms consistently and reasonably. Zurich understands and is fully aware of this duty. Zurich interpreted its "related claims" provision in its policy inconsistently and unreasonably in order to deprive United benefits owed under the Zurich Policy. Zurich determined that the Virginia Street Claims were a single-related claim, "arising out of the same negligent act, error or omission, or series of negligent acts errors or omissions," subject to one limit of liability under the Zurich Policy. However, Zurich refused to apply the "related claims" portion of the Zurich Policy consistently

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

and recognize the Military Road Claim as related to the Virginia Street Claims, even though the Military Road Project is in part of the same development as the Virginia Street Properties, and implemented the same roof design that caused the property damage at all three of the properties. Zurich refused to apply the related claims provisions of its policy consistently in order to deny coverage for the Military Road Claim.

d.       Zurich's decision to inconsistently and unreasonably interpret its related claims provision was motivated by a desire to unfairly enhance its own profits by avoiding contractual obligations and ignoring the contractual rights and economic interests of United. Zurich acted in a deliberate and concerted fashion to achieve this self-serving economic objective. Zurich's conduct in this regard tortiously breaches the duty of good faith and fair dealing owed to United, and recklessly disregards United's economic and property rights.

e.       Even though Zurich acknowledged coverage to United under the Zurich Policy for the Virginia Street Claims, Zurich refused to indemnify United for its damages related to the Virginia Street Claims until United agreed to enter into a release with Zurich, which in the recitals states that "United agrees that the Military Road claim is not covered under the [Zurich] Policy because the claim was not timely reported." While Plaintiff contends that this language is a legal nullity that has no force or effect, Zurich nonetheless forced United to sign a release that contained this false recital, refusing to provide United with the policy benefits to which it was entitled for the Virginia Street Claims until United agreed to the release containing this false recital. Zurich included this recital in the Virginia Street release in an effort to avoid paying benefits due to United under the Zurich Policy for the Military Road Claim, even though Zurich knows that the Military Road Claim is covered under the Zurich Policy because Zurich had notice of the related Virginia Street Claims during the Zurich Policy period.

76.     Zurich's conduct as alleged in this Complaint is part of a pattern of unfair claims practices intentionally engaged in by Zurich to enhance unfairly its own profits by avoiding contractual obligations and ignoring the contractual rights and economic interests of its insureds. These systematic practices include wrongfully denying insureds like United, coverage owed under their policies and refusing to indemnify insureds for clearly covered claims.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

77.     United properly assigned its claims against Zurich to Plaintiff as part of settlement between Plaintiff, L/P and United of the Military Road Claim.

78.     As a direct and proximate result of Zurich's tortious breach of the duty of good faith and fair dealing, Plaintiff, as assignee of United, has suffered damages in an amount to be proven at trial, including without limitation, legal costs incurred to obtain the benefits of the respective policies.

79.     In addition, Zurich's conduct as alleged in this Complaint is despicable and has been carried out in willful and conscious disregard of United's rights and economic interests, and is malicious, fraudulent and oppressive.  Accordingly, Zurich's conduct entitles Plaintiff, as the assignee of United, to punitive damages.

80.     Zurich's malicious, fraudulent, and oppressive conduct includes, for example: As described above, Zurich was fully aware of its duty to fully indemnify United. Zurich knew that failing to provide United with full indemnity would violate its contractual rights, and Zurich intentionally violated its' contractual duties to the harm and detriment of United, and Plaintiff as United's assignee.

### THIRD CAUSE OF ACTION

**(Violations of Nevada's Unfair Claims Settlement Practices Action,**

**Nev.  Rev. Stat. Ann. § 686A.310 – Against Zurich)**

81.     Plaintiff realleges the allegations set forth above and incorporates them by reference as though fully set forth herein.

82.     Zurich's conduct constitutes a violation of one or more of the following sub-sections of Nev. Rev. Stat. Ann. § 686A.310:

a.      Misrepresenting to United and its insurance agent, LP, pertinent facts or insurance policy provisions relating to any coverage at issue.

b.      Failing to effectuate prompt, fair and equitable settlements of the Milan Claim and Military Road Claims in which liability of Zurich has become reasonably clear.

c.      Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions

1    brought by such insureds when the insureds have made claims for amounts reasonably similar to

2    the amounts ultimately recovered.

3             d.      Failing to settle claims promptly, where liability has become reasonably

4    clear under one portion of the insurance policy coverage in order to influence settlements under

5    other portions of the insurance policy coverage.

6             e.      Failing to provide promptly to United a reasonable explanation of the basis

7    in the insurance policy, with respect to the facts of the Milan Claim, and Military Road Claim and

8    the applicable law, for the denial of the claims, including failing to consider United's

9    reconsideration request.

10            f.      On information and belief, Defendant has engaged in other conduct in the

11   handling of the Milan Claim and Military Road Claim that constitutes unfair practices under other

12   provisions of NRS 686A.310.

13        83.     As a direct and proximate result of Zurich's violations of Nev. Rev. Stat. Ann. §

14   686A.310, United and Plaintiff, as United's assignee, has sustained damages in an amount within

15   the jurisdictional limits of this Court, including, but not limited to, punitive damages.

16        84.     As a direct and proximate result of Defendant's violations of Nev. Rev. Stat. Ann.

17   § 686A.310, Plaintiff has incurred attorneys' fees, court costs, and other expenses in bringing this

18   action.

19                                          **PRAYER**

20        WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

21        1.      **FIRST CAUSE OF ACTION**:

22            a.      For general and specific damages in an amount to be proven at trial;

23            b.      For all costs and expenses to the full extent permitted by law;

24            c.      For pre-judgment interest and post-judgment interest to the full extent

25   permitted by law;

26            d.      For attorneys' fees to the extent recoverable by applicable law; and

27            e.      For such other and further relief as the Court deems fair and proper.

28

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

2. **SECOND CAUSE OF ACTION**:

    a.    For general and specific damages in an amount to be proven at trial;

    b.    For punitive damages to the full extent permitted by law;

    c.    For all costs and expenses to the full extent permitted by law;

    d.    For pre-judgment interest and post-judgment interest to the full extent permitted by law;

    e.    For attorneys' fees to the extent recoverable by applicable law; and

    f.    For such other and further relief as the Court deems fair and proper.

3. **THIRD CAUSE OF ACTION**:

    a.    For general and specific damages in an amount to be proven at trial;

    b.    For punitive damages to the full extent permitted by law;

    c.    For all costs and expenses to the full extent permitted by law;

    d.    For pre-judgment interest and post-judgment interest to the full extent permitted by law;

    e.    For attorneys' fees to the extent recoverable by applicable law; and

    f.    For such other and further relief as the Court deems fair and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Respectfully submitted,

DATED: July 24, 2020

PAYNE & FEARS  LLP

By    */s/ Sarah J. Odia*

SCOTT S. THOMAS, NV Bar No. 7937
SARAH J. ODIA, NV Bar No. 11053
HILARY A. WILLIAMS, NV Bar No. 14645
6385 S. Rainbow Blvd., Suite 220
Las Vegas, Nevada 89118
Tel. (702) 851-0300
*Attorneys for Capitol Specialty Insurance Corporation*

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

# EXHIBIT "1"

# EXHIBIT "1"

## ASSIGNMENT AND COOPERATION AGREEMENT

This ASSIGNMENT AND COOPERATION AGREEMENT ("Assignment") is made effective as of the last date it is signed below, by and between Capitol Specialty Insurance Corporation ("CapSpecialty"), and United Construction Company ("United").

## RECITALS

These recitals are included solely for the purpose of providing background and context for this Agreement and do not constitute admissions by any Party or a waiver by any Party of rights not otherwise extinguished by the releases contained herein.

A.    CapSpecialty issued an Insurance Agents and Brokers Professional Liability Policy, policy number IA20151100-03, to L/P Insurance Services, Inc. ("L/P"), effective from September 1, 2017, through September 1, 2018 ("CapSpecialty Policy").

B.    L/P is a licensed insurance broker that provided insurance brokerage services to United pursuant to the terms of a service agreement.

C.    Steadfast Insurance Company ("Zurich") issued a Professional Liability Insurance Policy, policy number EOC 0193620-00, to United, effective from April 20, 2016, through April 20, 2017 ("Zurich Policy").

D.    Logisticenter 395 Owner, LLC contracted with United for United to provide design-build services for two warehouses at 8020 N. Virginia St., Reno, Nevada, and 8040 N. Virginia St., Reno, Nevada (collectively, "Virginia Street Properties"). Logisticenter 395 Owner, LLC II contracted with United for United to provide design-build services for a warehouse at 8730 Military Road, Reno, Nevada ("Military Road Property"). KTR NV II, LLC contracted with United for United to provide design-build services for a warehouse at 385 Milan Drive, Sparks, Nevada ("Milan Property").

E.    On or around April 5, 2016, United discovered property damage at the Milan Property related to an allegedly defective roof design that was also implemented at the Military Road Property and the Virginia Street Properties.

F.    United alleges that it has incurred significant damages repairing the Milan Property, Military Road Property, and Virginia Street Properties in order to remediate property damage and correct the design-build issues that caused property damage at those properties. United continues to incur such damages at the Military Road Property.

G.    On or around August 5, 2016 L/P tendered a claim to Zurich on United's behalf under the Zurich Policy for property damage to the Milan Property related to the allegedly defective roof design. Zurich denied the claim on November 16, 2016 asserting that United had incurred remediation expenses without Zurich's prior approval.

Page 1 of 5

H.      On September 19, 2016, L/P tendered two additional claims on United's behalf to Zurich for property damage to the Virginia Street Properties related to the allegedly defective roof design. Zurich consolidated the claims into one claim and issued a reservation of rights letter to United related to the Virigina Street Properties in October 2016.

I.      On or around April 17, 2017, the owner made a claim against United for property damage to the Military Road Property arising out of the same design-build features that caused the same kind of damage to the Milan Property and the Virginia Street Properties ("Military Road Claim").

J.      When the Military Road Claim was reported to Zurich, Zurich denied coverage for it on the basis that it was not timely reported.

K.      On January 18, 2019, United filed a lawsuit against L/P in the Second Judicial District Court, Washoe County, Nevada, Case No.: CV19-00164 for professional negligence alleging that L/P failed to give timely notice of the Military Road Claim to Zurich ("L/P Litigation").

L.      L/P tendered the L/P Litigation to CapSpecialty under the CapSpecialty Policy. On January 25, 2019, CapSpecialty agreed to defend and indemnify L/P in the L/P Litigation subject to a reservation of rights.

M.      Following a January 21, 2020 mediation, L/P and United settled the L/P Litigation for ███████ ("United Settlement"). CapSpecialty has agreed to contribute ███████ in total toward the settlement pursuant to the terms of the CapSpecialty Policy, and L/P has agreed to contribute the remaining funds.

N.      The ███████ being paid to United in this settlement reimburses United for the costs United has incurred and will incur to remediate the roof at the Military Road Property to resolve the property owner's claim and demand.

O.      As part of the United Settlement, United agrees to assign its rights, benefits, proceeds, and causes of action against Responsible Entities, as defined below, related to claims made against United and damages incurred by United arising out of alleged property damage at the Milan Property, the Military Road Property, and the Virginia Street Properties.

## AGREEMENT

NOW, THEREFORE, in consideration of the covenants set forth below, and for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.      **Assignment**. United hereby assigns, conveys, and transfers to CapSpecialty any and all rights, benefits, proceeds, claims, and causes of action, whether contractual, legal, equitable, or otherwise, United has or may have against any and all insurers, contractors, subcontractors, suppliers, design professionals, consultants, or other non-owner entities ("Responsible Entities") arising out of any claims or demands made against United and/or damages

incurred by United related to its repair and/or correction of the construction defects, design issues, and/or resulting property damage at the Milan Property, the Military Road Property, and the Virginia Street Properties, including United's consequential damages ("Assigned Claims"). The Assigned Claims include, but are not limited to, United's rights, benefits, proceeds, claims, and causes of action against Zurich – or any company affiliated with Zurich; AXIS Insurance Company; North American Risk Services; Arch Specialty Insurance Company; AIG Excess Insurance Company; Lexington Insurance Company; Greenwich Insurance Company; CNA Insurance Company; Tokio Marine Specialty Insurance Company ("Tokio Marine"); Philadelphia Insurance Company ("Philadelphia"); State National Insurance Company; National Union Fire Insurance Company; Travelers Property and Casualty Insurance Company; Ray Heating Products, Inc. dba RHP Mechanical Systems ("RHP"); Houston Casualty Company; and any entity related to or affiliated with the Responsible Entities.

United does not assign, convey, or transfer to CapSpecialty any rights, benefits, proceeds, claims, and causes of action, whether contractual, legal, equitable, or otherwise, United has or may have against the owners of the Milan Property, the Military Road Property, or the Virginia Street Properties. CapSpecialty agrees it will not sue or otherwise pursue recovery against the owners of these properties.

CapSpecialty shall be entitled to all monies recovered from the Responsible Entities related to the Assigned Claims, subject to the terms of the Release and Recovery Agreement between CapSpecialty and L/P.

2.    **Cooperation**. United agrees to fully cooperate with CapSpecialty in its efforts to pursue the Assigned Claims against the Responsible Entities. United's duty to cooperate with CapSpecialty, includes, but is not limited to:

- Providing any information CapSpecialty requests, subject to the attorney-client and work product privileges;

- Within thirty (30) days after this Assignment is executed by United, providing CapSpecialty with complete copies of United's files related to its tender (or tenders made on behalf of United) of the Assigned Claims to the Responsible Entities, including, but not limited to all correpondence, all expert reports, investigative reports, internal reports, contracts, insurance policies, proof of damages, and any other documentation supporting or relating to the Assigned Claim;

- Within thirty (30) days after this Assignment is executed by United, providing CapSpecialty with complete copies of all of United's files related to the allegedly defective roof design that is the subject of the Assigned Claims, including but not limited to correspondence, contracts, plans, draft plans, investigative reports, internal reports, and demands;

- Making its employees, officers, or others affilated with United who have knowledge of either the design issues that are the subject of the Assigned Claims, or other facts related to the Assigned Claims, reasonably available for depositions, interviews, or to provide written statements or declarations, as requested by CapSpecialty;

Page 3 of 5

United does not have to provide CapSpecialty with documents, information, or material that is subject to the attorney-client or work product privileges.

United warrants and represents that the contractual claims assigned herein are in full force and effect and are fully assignable, with the exception of United's claims against Zurich related to the Virginia Street Properties, to the extent that those claims may have been released by United. United hereby assumes and agrees to perform all remaining and executory obligations, if any, under any contracts that are the subject of the Assigned Claims. United further represents that United has full rights and authority to transfer the claims subject to this assignment and that such claims are free of lien or encumbrance.

3.    **Severability**. To the extent that any provision of this Assignment shall be found to be illegal or unenforceable for any reason, such provision shall be modified or deleted in such a manner as to make this Assignment, as so modified, legal and enforceable under applicable laws.

4.    **Miscellanous**. United and CapSpecialty agree and understand that the language of this Assignment will not be presumptively construed against either party.

5.    **Capacity**. Each party has the right and authority to enter into this Assignment and there is no agreement or obligation of any kind which would prevent it from performing its duties, responsibilities or obligations to the other party under this Assignment.

6.    **Waiver**. No waiver of any breach of any provision of this Assignment shall be deemed to be a waiver of any preceding or succeeding breach of the same provision or any other provision.

7.    **Applicable Law**. This Assignment shall be governed by and construed in accordance with the laws of the State of Nevada.

8.    **Construction**. The language of this Assignment shall be construed as a whole, according to its fair meaning, not strictly for or against Assignor and Assignee and with no regard to the identity or status of any person or persons who drafted this Agreement.

9.    **Attorneys' Fees**. In the event of any litigation, claim or other legal proceeding relating to a breach or the interpretation of this Assignment, the prevailing party shall be entitled to recover its reasonable attorneys' fees and court costs.

10.    **Jurisdiction**. Any litigation or legal action between the parties concerning this Assignment shall take place in the U.S. District Court for the District of Nevada. The parties hereby consent to the jurisdiction of such court or courts and agree to appear in any such action upon written notice thereof.

11.    **Counterparts**. This Assignment may be executed in counterparts, each of which shall be an original and all of which when taken together shall be deemed to constitute one and the same instrument.

**IN WITNESS WHEREOF**, CapSpecialty and United, by their duly authorized representatives, affix their signatures below.

DATED:                              CAPITOL SPECIALTY INSURANCE CORPORATION

                                    By: _____

                                        Head of Professional Liability Claims
                                    Its: _____


DATED:                              UNITED CONSTRUCTION COMPANY

                                    By: _____

                                    Its: _PRESIDENT & COO_____


**END OF SIGNATURES**

4834 0901 9578.1