UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CAPITOL SPECIALTY INSURANCE CORPORATION,<br><br>　　　　　　　　　　Plaintiff(s),<br><br>　　v.<br><br>STEADFAST INSURANCE COMPANY, et al.,<br><br>　　　　　　　　　　Defendant(s). | Case No. 2:20-CV-1382 JCM (VCF)<br><br>ORDER |

Presently before the court is plaintiff Capitol Specialty Insurance Corporation ("Capitol Specialty" or "plaintiff")'s motion for summary judgment regarding the Military Road claim. (ECF No. 164). Defendant Steadfast Insurance Company ("Steadfast" or "defendant") filed a response (ECF No. 171), to which plaintiff replied (ECF No. 174).

Also before the court is plaintiff's motion for summary judgment relating to the Milan property claim. (ECF No. 165). Defendant filed a response (ECF No. 172), to which plaintiff replied (ECF No. 176).

Also before the court is defendant's motion for summary judgment or, in the alternative, partial summary judgment. (ECF No. 166). Plaintiff filed a response (ECF No. 173), to which defendant replied (ECF No. 175).

**I.   Background**

This is a breach of contract case arising out of a disagreement between insurance companies regarding two construction projects.

Capitol Specialty is pursuing this action as an assignee of United Construction Company ("United"). (ECF No. 37 at 1). United is a commercial construction company that provides design-build services to commercial property owners. (*Id.* at 2). Steadfast issued a contractor's protective professional indemnity and liability insurance policy (the "policy") to United that incepted on April 20, 2016, and expired on April 20, 2017, with limits of $5,000,000. (*Id.*).

On October 10, 2014, United entered into the first of two design-build contracts pertinent to the motions filed by both parties: a contract for the design and construction of a distribution facility located at 385 Milan Avenue in Reno (the "Milan property"). (*Id.* at 3). United contracted with RHP Mechanical Systems ("RHP") to design a heating, ventilation, and air conditioning ("HVAC") system inside the property. (*Id.*). United completed construction of the Milan property in June of 2015. (*Id.*).

The Milan property was built with a white thermoplastic (TPO) membrane roof. (*Id.*). On April 5, 2016, physical damage, including but not limited to mold and other moisture-related damage, was discovered in and around the roof membrane and components of the Milan property. (*Id.*). Three months later, the owners of the Milan property asserted a claim against United, alleging that the damage to the property was due to United's design of the roof and installation of the HVAC system. (*Id.* at 3-4).

United tendered the claim pertaining to the Milan property to Steadfast under the policy on August 5, 2016. (*Id.*). Zurich North America ("Zurich"), a company related to Steadfast, denied United's tender of the Milan property claim on November 16, 2016. (*Id.*).[1] In the time between United's tendering of the claim and Zurich's denying the claim, United's experts issued a report

---

[1] The policy itself was issued by Zurich. (ECF No. 166-1 at 18). The parties note that "Steadfast" and "Zurich" are used interchangeably through their motions, as the two entities are related companies. (*See* ECF No. 22).

- 2 -

concluding that the damage to the Milan property was a result of the roof's design.  (*Id.*).

On September 25, 2015, United entered into the second of two design-build contracts pertinent to the motions filed by both parties: a contract for the design and construction of a distribution facility located at 8730 Military Road in Reno (the "Military Road property").  (*Id.* at 6).  United completed this project in July of 2016 and implemented the same white thermoplastic (TPO) membrane roof as it did on the Milan property.  (*Id.*).  United contracted with RHP for the design and installation of the HVAC system in the Military Road property.  (*Id.* at 7).

On April 14, 2017, the owner of the Military Road property discovered physical damage, including but not limited to mold and other moisture-related damage, within the roof substrates.  (*Id.*).  The owner subsequently asserted a claim against United for the damage.  (*Id.*).

Four days later, United asked its insurance broker, L/P Insurance Services, LLC ("L/P") to "advise the appropriate carriers that we have now found microbial growth on the [Military Road property]."  (*Id.*).  The Steadfast/Zurich policy lapsed on April 20, 2017, and United did not renew the policy.  (*Id.*).  On June 20, 2017, the sixty (60) day reporting period under the policy expired.  (*Id.*).

In July, United contacted Zurich to obtain a status update on the Military Road claim.  (*Id.*).  Zurich advised United that it did not have a claim number in its system and offered to work with L/P "to ensure we have the tender docs [sic] and that a claim number has been established and assigned to the proper Claims Specialist."  (*Id.*).  L/P notified Zurich's claims adjuster that the Military Road claim was related to the claim made for the Milan Road property and another property located on Virginia Street, both of which Capitol Specialty alleges were tendered to Zurich during the policy period.  (*Id.* at 7, 8).  On July 27, 2017, Zurich issued a letter to United denying coverage under the policy for the Military Road claim.  (*Id.*).

United filed a lawsuit against L/P seeking damages related to the Military Road claim. (*Id.* at 11). Capitol Specialty, L/P, and United settled all of United's claims against L/P related to the Military Road claim. (*Id.*). As part of the settlement agreement, United assigned to Capitol Specialty all of its claims against Zurich, RHP, and other defendants who have since been terminated from the instant matter related to the Milan property and Military Road property claims. (*Id.*). Capitol Specialty is now pursuing United's claims against Zurich/Steadfast and RHP pursuant to the assignment. (*Id.*).

Capitol Specialty's second amended complaint asserts three causes of action against Steadfast: (1) breach of contract related to the denial of coverage for the Milan property and Military Road property claims; (2) breach of the implied covenant of good faith and fair dealing; and (3) violations of Nevada's unfair claims settlement practices act. (*Id.* at 12-18).

Both parties filed motions for summary judgment. Capitol Specialty moves for partial summary judgment on its cause of action for breach of contract related to the denial of coverage for the Milan property and Military Road property claims. (ECF Nos. 164; 165). Steadfast moves for summary judgment on all causes of action Capitol Specialty asserts against it. (ECF No. 166).

The court finds that Capitol Specialty violated the terms of the policy relating to the Milan property by incurring costs without Steadfast's consent. Moreover, Capitol Specialty has suffered no damages relating to the Military Road property due to the prior United settlement.

As there is no genuine dispute of material fact for the breach of contract claim because Steadfast rightfully denied coverage, there also is no dispute as to Capitol Specialty's bad faith and unfair claims causes of action. Accordingly, the court denies both of Capitol Specialty's motions for partial summary judgment and grants Steadfast's motion for summary judgment in its entirety.

## II. Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id*.

In determining summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). Moreover, "[i]n such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Id*.

By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not

consider the non-moving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

The Ninth Circuit has held that information contained in an inadmissible form may still be considered for summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410,

418-19 (9th Cir. 2001)) ("[t]o survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rule of Civil Procedure 56.").

**III.     Discussion**

    A.  Breach of contract

Capitol Specialty and Steadfast both move for summary judgment on Capitol Specialty's cause of action for breach of contract.  The court will analyze Steadfast's denial of coverage for the Milan property and Military Road property in turn.  The plain language of the policy and the fact that Steadfast has already settled with United, Capitol Specialty's assignor, allows the court to adjudicate this issue efficiently and without wading into the surfeit of exhibits provided by the parties.

                      *i.     Milan property claim*

Capitol Specialty asserts a claim for relief for breach of contract against Steadfast related to Steadfast's denying coverage for the Milan property claim.

"A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement." *Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 1987) (citation omitted).  To prevail on a claim for breach of contract, a plaintiff must demonstrate (1) the existence of a valid contract; (2) that the plaintiff performed or was excused from performance; (3) that the defendant breached the contract; and (4) that the plaintiff sustained damages. *Calloway v. City of Reno*, 993 P.2d 1259, 1263 (Nev. 2001); *see also Sierra Dev. Co. v Chartwell Advisory Group, Ltd.*, 223 F. Supp. 3d 1098, 1103 (D. Nev. 2016).

The court need not tarry in its analysis, as the plain language of the policy makes it readily apparent that United is prohibited from incurring any costs or charges without Zurich's written

consent.

Capitol Specialty believes the policy provides coverage to United. (ECF No. 165 at 10). To determine whether Capitol Specialty is correct in its supposition, the court must turn to the plain language of the policy, which is the operative document in this case. *See Keife v. Metro. Life Ins. Co.*, 797 F. Supp. 2d 1072, 1075 (D. Nev. 2011) ("[u]nder Nevada law . . .[t]he starting point for the interpretation of any contract is the plain language of the contract.") (internal citations omitted).

The policy provides the following:

> No costs, charges, or related "Claims Expenses" shall be incurred without our written consent, which shall not be unreasonably withheld.
>
> The "Insured" shall do nothing to prejudice our rights under this policy nor shall the "Insured" admit liability or settle any "Claim" without our written consent . . . .

(ECF No. 166-1 at 31).

United incurred costs totaling $1,273,808.44 to repair mold and moisture damage to the roof substrates at the Milan property. (ECF No. 165 at 7). The court finds that it is undisputed that United failed to obtain Steadfast's consent before incurring the remediation costs. Because the Milan property remediation costs were incurred involuntarily and without Steadfast's consent, denial of coverage was appropriate.

Capitol Specialty cites a non-binding California appellate case holding that an insured may avoid a voluntary-payment provision where the previous payments were made involuntarily because of circumstances beyond its control. (*Id.* at 16; see *Jamestown Builders, Inc. v. Gen. Star Indem. Co.*, 77 Cal. App. 4th 341, 348 (1999)). Ironically, the case does not buttress, but rather weakens, Capitol Specialty's argument. The court held that "no-voluntary-payments insurance provisions in the absence of economic necessity, insurer breach, or other *extraordinary*

*circumstances*" should be enforced. *Id.* (emphasis added).

Nowhere in Capitol Specialty's motion is there a citation to a Ninth Circuit case, except for two instances where it cites the legal standard for summary judgment and the elements of an action for breach of contract. Moreover, the facts demonstrate that Capitol Specialty voluntarily incurred these costs. On May 12, 2016, the owner of the Milan property requested that United remediate the mold issue. (ECF No. 166-1 at 85). An employee for United responded in the affirmative when asked whether United "agreed to initially bear the cost of [remediation efforts] but would reserve the right go back against the owner if your company concluded the ownership bear it." (*Id.* at 87-88).

The employee further testified that he was aware that United was paying the costs, and there was no commitment from the property owner to bear any portion of it. (*Id.* at 92). Most importantly, and as Steadfast notes, there is no written record of the owner ever indicating he had agreed to pay for the costs. There is also no record of United obtaining Steadfast's consent to incur remediation expenses.

In the absence of facts pointing to the contrary, the court looks to the plain language of the policy in ruling that Steadfast did not breach the policy by refusing to provide coverage for United's remediation efforts at the Milan property. *See Keife*, 797 F. Supp. 2d at 1075.

Accordingly, the court denies Capitol Specialty's motion for summary judgment relating to the Milan property claim (ECF No. 165).

   ii.  *Military Road claim*

Analyzing whether Steadfast breached the policy by failing to provide coverage for the Military Road claim is more straightforward.

"An assignee stands in the shoes of the assignor and ordinarily obtains only the rights

possessed by the assignor at the time of the assignment, and no more." *Deutsche Bank Nat'l Tr. Co. v. SFR Invs. Pool 1, LLC*, No. 2:16-cv-00470-APG-DJA, 2020 WL 247479, at *2 (D. Nev. Jan. 16, 2020). "A claim for breach of contract is not actionable without damage." *Covenant Care Cal., LLC v. Shirk*, No. 2:17-cv-00956-JAD-VCF, 2018 WL 3429669, at *2 (D. Nev. July 16, 2018).

Capitol Specialty asserts its claims against Steadfast based on an assignment of rights Capitol Specialty received from United. (ECF No. 1 at 11). As Steadfast correctly avers in its motion, it is undisputed that all claims asserted against Steadfast by Capitol Specialty are "derivative of and based solely on rights United ostensibly possessed at the time it assigned its rights" to Capitol Specialty. (ECF No. 166 at 14).

As explained, *supra*, L/P, who at the time was United's insurance broker, settled the litigation with United for $4,097,000. (ECF No. 166-1 at 277). This amount was paid to United for remediation costs related the Military Road property. (*Id.*). Here, Capitol Specialty seeks repair costs related to the Military Road property in that same amount. (*Id.* at 293). This amount has *already* been paid to United, Capitol Specialty's assignor, as reimbursement for the Military Road remediation. (*Id.* at 277) (emphasis added). Accordingly, United suffered no damages and had no rights to assign when it settled with L/P.

Secondly, coverage for the Military Road claim is barred pursuant to the notice provision in the policy. The policy provides that "[w]ritten notice must be provided to [Zurich/Steadfast] no later than 60 days after the expiration or termination of the policy." (*Id.* at 31). The policy lapsed on April 20, 2017. (ECF No. 37 at 2). L/P thus had until June 19, 2017, to provide notice on behalf of United to Steadfast regarding the issues at the Military Road property. There is no evidence in the record suggesting that L/P provided notice to Steadfast prior to this date.

Capitol Specialty posits that given the Military Road property damage was due to the same white thermoplastic (TPO) membrane roof as used in the Milan property, the claim "relates back" to the timely submitted Milan claim. (ECF No. 164 at 19). A plain reading of the policy does not reveal an explicit "related claims provision", and no provision usurps the reporting requirement, which Capitol Specialty undoubtedly failed to satisfy.

Steadfast properly denied coverage for the Military Road claim. Accordingly, the court denies Capitol Specialty's motion for summary judgment relating to the Military Road claim (ECF No. 164) and grants Steadfast's motion for summary as it relates to Capitol Specialty's cause of action for breach of contract.

### B. Breach of the implied covenant of good faith and fair dealing and unfair claims settlement practices act

Capitol Specialty asserts two more causes of action against Steadfast in addition to the breach of contract claim: (1) breach of the implied covenant of good faith and fair dealing and (2) violations of Nevada's unfair claims settlement practices act.

To state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege (1) plaintiff and defendant were parties to a contract; (2) defendant owed a duty of good faith the plaintiff; (3) defendant breached that duty by performing in a manner that was unfaithful to the purpose of the contract; and (4) plaintiff's justified expectations were denied. *See Hilton Hotels v. Butch Lewis Prods.*, 808 P.2d 919, 923 (Nev. 1991).

A contractual breach of the implied covenant of good faith and fair dealing occurs "[w]here the terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract." *Id.*; *see Shaw v. CitiMortgage, Inc.*, 201 F. Supp. 2d 1222, 1252 (D. Nev. 2016).

Nevada Revised Statute 686, concerning unfair claims settlement practices, outlines

sixteen provisions that constitute an "unfair practice," all of which relate to misrepresentations and bad-faith actions on the part of insurers.  NRS 686A.310.  To proceed under the act, the plaintiff must prove that the defendant acted unreasonably in violation of one or more of the provisions of the act.  *See, e.g., Zurich Am. Ins. Co. v. Coeur Rochester, Inc.*, 720 F. Supp. 2d 1223, 1236 (D. Nev. 2010).

The court has already found in this order that denial of the Milan property and Military Road claims was proper and Steadfast did not breach its contract with United.  Given that Capitol Specialty cannot show that Steadfast breached its duty by performing in a manner that was unfaithful to the purpose of the contract, its claim for breach of the implied covenant of good faith and fair dealing fails.  By finding that denial of coverage was proper, it is untenable for Capitol Specialty to maintain a claim for unfair settlement practices under NRS 686, which requires Capitol Specialty to prove that Steadfast acted unreasonably.  *See id*.

Accordingly, the court grants Steadfast's motion for summary judgment as to Capitol Specialty's causes of action for breach of the implied covenant of good faith and fair dealing and violations of Nevada's unfair claims settlement practices act.

**IV.	Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff Capitol Specialty Insurance Corporation's motion for summary judgment regarding the Military Road claim (ECF No. 164) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that plaintiff Capitol Specialty Insurance Corporation's motion for summary judgment regarding the Milan property claim (ECF No. 165) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that defendant Steadfast Insurance Company's motion for summary judgment (ECF No. 166) be, and the same hereby is, GRANTED.

The clerk is instructed to enter judgment on behalf of defendant Steadfast Insurance Company only.

The clerk is further instructed to keep this case open, as defendant RHP Mechanical Systems is still an active party in this action.

DATED March 29, 2024.

_____
UNITED STATES DISTRICT JUDGE